IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SUSAN SCHNEBERGER;<br>LACY STIDMAN; and<br>JOHNNY TRENT,<br>Individually and as Class<br>Representatives,<br><br>    Plaintiffs,<br><br>v.<br><br>AIR EVAC EMS, INC. d/b/a<br>AIR EVAC LIFETEAM;<br>and EAGLEMED, LLC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-16-843-R |

## ORDER

Before the Court is Defendants' Motion to Dismiss and, in the alternative, to Strike Class Allegations. [Doc. 19]. For the reasons that follow, the Court GRANTS Defendants' Motion to Dismiss.

## I. BACKGROUND

This case began with the question of whether the rates that Defendants charged Plaintiffs for air ambulance services are excessive as a matter of Oklahoma law. It ends at the pleading stage with a determination that federal law preempts Plaintiffs' claims.

Defendants Air Evac EMS, Inc. ("Air Evac") and EagleMed, LLC ("EagleMed") are air ambulance carriers who provided emergency transport to Plaintiffs or their relatives in 2014 and 2015. Plaintiffs seek relief on the ground that these charges were unreasonable. Plaintiff Susan Schneberger, for example, was originally billed $63,564.71 after EagleMed

1

transported her now-deceased husband 416 miles from one hospital in Norman, Oklahoma, to another one in Houston, Texas. She alleges that she did not receive the choice of transporting her husband in any other manner. When Ms. Schneberger's insurer refused to pay any of her balance with EagleMed on the grounds that the charges were not medically necessary, EagleMed offered her a "significant discount on [her] past due account" of 16%, resulting in a charge of $53,133.83.[1] [Doc. 1, Ex. 2, at 11].

Plaintiff Lacy Stidman's trip with EagleMed was shorter though her experience was similar. EagleMed flew her 67 miles from a location in Pittsburg County, Oklahoma, to a hospital in Tulsa, Oklahoma, bringing her bill to $34,696.79. Stidman's insurer paid a portion, leaving her with the remaining balance of $19,516.26. [*Id.* at 12].

Finally, Plaintiff Johnny Trent faces an account balance of $45,101.94 after Defendant Air Evac rushed him 106 miles from Elk City, Oklahoma, to Oklahoma City. [*Id.* at 13].

These three Plaintiffs, along with several others, originally filed a putative class action in state court in Oklahoma against Air Evac, EagleMed, and two other Defendants—Air Methods Corp. and Rocky Mountain Holdings, LLC ("Air Methods Defendants"). Plaintiffs alleged breach of implied contract, money had and received, and violations of the Oklahoma Consumer Protection Act. They also sought declaratory and injunctive relief. [Doc. 1, Ex. 2]. Defendants removed [Doc. 1] and survived a Motion to Remand. [Doc.

---

[1] The Court is aware that Plaintiffs' bills are not by themselves sufficient to satisfy 28 U.S.C. § 1332's amount in controversy requirement for traditional jurisdiction. But as the Court previously found, Plaintiffs' allegations were sufficient to confer jurisdiction under the Class Action Fairness Act. [Doc. 47].

47]. The Court temporarily stayed this case pending Defendants' Motion before the Judicial Panel on Multidistrict Litigation seeking to centralize the class actions against the Air Methods Defendants that were percolating around the country. [Doc. 53].

Though the MDL Panel denied the request, it noted that transfer of claims against the Air Methods Defendants would be eminently feasible and would minimize any potential for duplicative discovery or inconsistent pretrial rulings. [Doc. 64, Ex. 1]. To that end, this Court severed the claims against the Air Methods Defendants pursuant to the Parties' Joint Motion. [Doc. 65]. The Court then transferred the claims against the Air Methods Defendants to the United States District Court for the District of Colorado. [*Id*.]. Following this severance and transfer, only the claims against Air Evac and EagleMed remained before the Court, thus leaving three Plaintiffs—Schneberger, Stidman, and Trent.

Because Plaintiffs dismissed their Oklahoma Consumer Protection Act claim, all that remain are their claims for breach of implied contract, for money had and received, and their request for declaratory and injunctive relief. Plaintiffs argue that Defendants' rates, which allegedly exceed the customary and reasonable rates allowable under Oklahoma law, do not rationally relate to the value of Defendants' services. [Doc. 1, Ex. 2, at 16]. Worse, Plaintiffs argue, they did not legally consent because they were unconscious or lacked legal capacity when transported; and if any relative signed a form authorizing transport for Plaintiff, it was only after learning that the Plaintiff would die without the transport. [*Id*. at 17]. Defendants move to dismiss these claims as federally preempted, or in the alternative, to strike Plaintiffs' class allegations as facially defective. Because the Court finds that the Airline Deregulation Act of 1978 does in fact preempt

3

Plaintiffs' claims, the Court need not reach the question of whether Plaintiffs can maintain a class action.

## II. STANDARD ON A MOTION TO DISMISS

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss, a pleading must offer more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). There must be "sufficient factual matter, [which if] accepted as true . . . state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court "must accept all the well-pleaded allegations of the complaint . . . and must construe them in the light most favorable to the [non-moving party]." *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014). That said, "[a] district court may grant judgment as a matter of law under Federal Rule of Civil Procedure 12(b)(6) on the basis of an affirmative defense like preemption when the law compels that result." *Caplinger v. Medtronic, Inc.*, 784 F.3d 1335, 1341 (10th Cir. 2015), *cert. denied*, 136 S. Ct. 796 (2016).

## III. ANALYSIS

### A. Preemption under the ADA

"A fundamental principle of the Constitution is that Congress has the power to preempt state law." *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372 (2000). Pursuant to the Supremacy Clause, state law that conflicts with federal law has no effect. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992). It is therefore "well-established

that within Constitutional limits Congress may preempt state authority by so stating in express terms." *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm.,* 461 U.S. 190, 203 (1983).

The Airline Deregulation Act of 1978 ("ADA") contains one such preemption provision. That clause invalidates all state laws that have a connection with an air carrier's price or rate:

> a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1).[2]

The ADA defines the term "air carrier" as "a citizen of the United States undertaking by any means, directly or indirectly, to provide air transportation." 49 U.S.C. § 40102(a)(2). The initial question, then, is whether air ambulance providers such as Air Evac and EagleMed qualify as "air carriers" under the ADA and thus may invoke the federal-preemption defense at all. That much is settled. Air Evac and EagleMed are authorized by the Federal Aviation Administration to operate as "air carriers" under 49 C.F.R. Part 119 and to provide on-demand air ambulance services in "[t]he 48 contiguous United States and the District of Columbia" under 49 C.F.R. Part 135. This makes them "air carriers" under the ADA. *See EagleMed, LLC v. Wyoming*, No. 15-cv-0026-ABJ (D.

---

[2] The ADA's original preemption clause read, "No state . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority to provide air transportation." 49 U.S.C. App. § 1305(a)(1). Despite the amendment, "Congress intended the revision to make no substantive change." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 223 n.1 (1995).

5

Wy. May 16, 2016), ECF No. 45 at 29, *appeal docketed*, No. 16-08064 (10th Cir. Jun. 16, 2016) (concluding that EagleMed had "certificates under Parts 119, 135, and 298 of the FAA" and was thus an "air carrier" under the ADA); *Concovich v. Air Evac, EMS*, 2016 WL 843276 at *2 (S.D. Ill. Mar. 4, 2016) (holding that Air Evac was an "air carrier" under the ADA). Because of these federal authorizations, Courts have all but uniformly held that air ambulance providers are "air carriers" under the ADA.[3]

The follow-up question is whether the state-law protections that Plaintiffs invoke here—those governing the reasonableness of a contract—are in fact those that "relate[] to a price, route, or service of an air carrier" under the ADA. 49 U.S.C. § 41713(b)(1). The Supreme Court in *Morales v. Trans World Airlines, Inc.* interpreted that clause broadly, holding that the ADA preemption provision applied to all "[s]tate enforcement actions *having a connection with or reference to airline 'rates, routes, or services*.'" 504 U.S. 374, 384 (1992) (emphasis added). The ADA thus preempted the state consumer-protection laws at issue in *Morales* because they regulated the manner and content of airline advertising.[4] *Id.*

---

[3] *See, e.g., Bailey v. Rocky Mountain Holdings, LLC*, 136 F. Supp. 3d 1376, 1381–82 (S.D. Fla. 2015), *appeal docketed*, No. 15-14415 (11th Cir. Oct. 1, 2015); *Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 731–32 (E.D.N.C. 2008). Granted, Plaintiffs point to *Eagle Air Med Corp. v. Colorado Board of Health*, 570 F. Supp. 2d 1289 (D. Co. 2008), to show that at least one district court has found air ambulance carriers do not qualify as "air carriers" under the ADA. Yet that court merely concluded that it was not sufficiently clear, at least for purposes of invoking the *Younger* abstention doctrine, that the ADA preempted all state law regulating emergency medical transport. *Id.* at 1293.

[4] This is not to say that the ADA preempts all state laws that have some tangential application to an air carrier. *Morales* "left room for state actions 'too tenuous, remote, or peripheral . . . to have pre-emptive effect.'" *Wolens*, 513 U.S. at 224 (quoting *Morales,* 504 U.S. at 390).

6

This is not to say a consumer can never maintain an action against an air carrier. The Supreme Court in *American Airlines, Inc. v. Wolens* clarified that claims that allege no violation of state-imposed obligations and instead seek "recovery solely for the [air carrier's] breach of its *own, self-imposed undertakings*" are not preempted under the ADA. 513 U.S. at 228 (emphasis added). In other words, run-of-the-mill breach of contract claims against air carriers are not preempted so long as plaintiffs base their claims on "privately ordered obligations" rather than "state-imposed obligations." *Id.* Because of this distinction between private contractual undertakings and state imposed obligations, the ADA did not preempt plaintiffs' claim that American Airlines had breached its contract when it retroactively modified the terms of its premium flyer program. *Id.* at 232.

So in the wake of *Morales* and *Wolens* states were clearly prohibited from passing statutes that "impos[ed] their own substantive standards with respect to rates, routes, or services of an air carrier." *Lyn-Lea Travel Corp. v. Am. Airlines*, 1999 WL 777716, at *2 (N.D. Tex. Sept. 29, 1999). The question was whether a state was still substituting its own substantive standard when it applied its own common law instead of a specific statute. In *Northwest, Inc. v. Ginsberg* (2014) the Court said yes; the distinction between common law and statutory law was immaterial because "the ADA's deregulatory aim can be undermined just as surely by a state common-law rule as it can be by a state statute or regulation." 134 S.Ct. 1422, 1430. The ADA therefore preempted claims for breach of the implied covenant of good faith and fair dealing, at least where a state "employ[s] the doctrine to ensure that a party does not violate community standards for decency, fairness, or reasonableness." *Id.* at 1431 (internal quotes omitted). Unlike the claimants in *Wolens*

7

who sued on a contract that "the parties voluntarily undertook," the plaintiff in *Ginsberg*, whose membership in the airline's frequent flyer program had been terminated, was actually "seeking reinstatement of his membership . . . *to obtain reduced rates and enhanced services*." *Id*. at 1430 (emphasis added). In other words, Plaintiff's claim impermissibly attempted "to enlarge his contractual agreement" with the airline by imposing on the airline the substantive duty to deal in good faith. *Id*. at 1433. It was thus an attempt to control the airline's prices, rates, and services and consequently preempted by the ADA.

**B. Plaintiffs' Claims**

That brings the Court to Plaintiffs' first claim for breach of implied contract. They argue that Defendants never disclosed their rates, meaning they were thus obliged under an implied contract to charge the fair and reasonable value of the services and materials it provided to Plaintiffs. [Doc. 1, Ex. 2, at 23].[5] Rather than do this, Defendants charged inflated prices that bore no reasonable relationship to the services rendered, thereby breaching implied contracts, including the implied covenant of good faith and fair dealing. [*Id*.]

The ADA preempts this claim: at bottom, Plaintiffs maintain that Defendants' prices are unreasonably high under Oklahoma law. [Petition, Doc. 1, Ex. 2, at 23 (Defendants "charg[ed] inflated prices that bear no reasonable relationship to the services rendered.");

---

[5] Plaintiffs also insist that because there were no valid enforceable agreements, Defendants' collection efforts cannot prevail. But those collection efforts, if they have been commenced at all, are not at issue here. And if there were no valid agreements, it is unclear how Defendants could have breached a contract.

*Id.* at 16 (Defendants' rates "exceed[] the customary, and reasonable amount charged in Oklahoma for similar transport.")]. The argument is an obvious attempt to have Oklahoma "impos[e] [its] own substantive standards with respect to rates . . ." *Wolens*, 513 U.S. at 232. After all, *Ginsberg* decided that the "breach of implied covenant claim cannot be viewed as simply an attempt to vindicate the parties' implicit understanding of the contract." *Ginsberg,* 134 S.Ct. at 1432; *also see, e.g., Ray v. Am. Airlines, Inc.*, 2008 WL 2323923, at *10 (W.D. Ark. June 2, 2008) (dismissing plaintiff's claim for breach of the implied covenant of good faith and fair dealing because *Wolens* "confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement") (internal cite omitted).

In other words, it is immaterial whether Plaintiffs package their claim as one for charging unreasonable rates or one for failing to deal in good faith; Plaintiffs are still alleging that Defendants breached the "state-imposed obligation[]" to charge reasonable rates. *Wolens*, 513 U.S. at 228. And in any event, this Court would not be the first to dismiss a claim for excessive air carrier rates when the claim was merely masquerading as one for breach of contract. *See, e.g., Crane v. Native Am. Air Ambulance, Inc.*, 2007 WL 625917 at *13 (D. Az. Feb. 23, 2007) (dismissing plaintiff's claim for breach of implied warranty against air ambulance carrier since the "gravamen of Plaintiff's class action against [air ambulance carrier] is that [its] rates or prices for air evacuation transportation are excessive"); *see also Bailey v. Rocky Mountain Holdings, LLC*, 136 F. Supp. 3d 1376, 1382 (S.D. Fla. 2015) (granting summary judgment against Plaintiff because "each of Plaintiff's state and common law claims can only be fairly characterized as directly challenging

9

Defendants' rates for its air ambulance services"). If Plaintiffs were simply attempting to enforce a specific term of the contract, their claims could proceed. *See, e.g., Power Travel Int'l, Inc. v. Am. Airlines, Inc.*, 257 F. Supp. 2d 701, 707 (S.D.N.Y. 2003) (holding no federal preemption because "[plaintiff] seeks the enforcement of an explicit remuneration term in the contract drafted by the airline carriers"). Because they are not, preemption applies.

None of Plaintiffs' other arguments against preemption persuade. First, Defendants' attempts in unrelated cases to recover on unpaid accounts by bringing breach of contract claims do not now estop Defendants from challenging Plaintiffs' breach-of-implied-contract theory here. If Defendants had previously asserted there were no enforceable contracts with its transportees but were now trying to recover on a contract theory, Plaintiffs' theory might hold water. But at least to the Court's knowledge, Defendants have never asserted these contracts are not enforceable and, at any rate, this case does not concern Defendants' collection efforts.

Second, Plaintiffs' argument that preemption is inappropriate because the parties could "contract around" Defendants' high rates by plugging in a predetermined price misreads *Ginsberg*. True, Ginsberg acknowledged that a "[s]tate's implied covenant rules will escape pre-emption only if the law of the relevant State permits an airline to contract around those rules . . ." 134 S. Ct. at 1433. For example, parties cannot contract around certain duties such as the one to deal fairly and in good faith. *Id.* at 1432. Plaintiffs' point, however, ignores the inherent bargain at the heart of every contract and assumes the parties still would have contracted had there been a predetermined price. Plaintiffs, after all, would

10

have never agreed to the transport (so they insist) had they known Defendants' rates beforehand. And Defendants never would have transported Plaintiffs for the rates Plaintiffs deem reasonable.

Hindsight aside, perhaps all that is certain is there was no supplied price. But to ask the Court, or rather state law, to dictate one is to make the sort of policy judgment that invites ADA preemption. Defendants believe they are entitled to the full charges. Requiring them to accept less because of a policy-based inquiry—what's a reasonable rate for air ambulance services?—necessarily imposes upon them a rate that "the State dictates" rather than one that "the [air carrier] itself undertakes." *Wolens*, 513 U.S. at 233.

As for Plaintiffs' argument that the claim is better thought of as one for unjust enrichment, preemption would still apply because that claim turns on notions found only outside the four corners of a contract. *Overka v. Am. Airlines, Inc.*, 790 F.3d 36, 40 (1st Cir.), *cert. denied*, 136 S. Ct. 372, 193 L. Ed. 2d 292 (2015) (quoting *Brown v. United Airlines, Inc.*, 720 F.3d 60, 71 (1st Cir. 2013)) (explaining that "unjust enrichment claims fell outside the *Wolens* exception because they were "predicated on the lack of any agreement" between the parties and instead turned on external considerations by which the parties had not agreed to be bound").

All things considered, letting these claims proceed would undermine the very purpose of the ADA preemption provision: "prevent[ing] the States from undoing what the [ADA] was meant to accomplish," namely, allowing "air transportation [rates] to be set by market forces." *Ginsberg*, 134 S.Ct. at 1430. That said, Plaintiffs' policy arguments are not without merit. Maybe the ADA did not contemplate air ambulance services at the time

11

of inception. Or perhaps the statute is particularly ill-suited to regulate air ambulance services given the lack of consumer choice in the market for air ambulance services. In fact, finding preemption here might further suppress competition in this industry. But those reasons alone are not license to ignore the welter of authority construing air ambulances as air carriers under the ADA. And Plaintiffs' points certainly do not grant the Court leave to discard the Supreme Court's decisions in *Morales, Wolens,* and *Ginsberg* characterizing Plaintiffs' claim as the precise type of state enforcement action preempted by the ADA.

To be clear, the Court sympathizes with Plaintiffs' argument that these rates are unfair. Plaintiffs, however, can always lodge their complaints with the Department of Transportation. *See, e.g., Concovich v. Air Evac Ems, Inc.*, 2016 WL 843276, at *3 (S.D. Ill. Mar. 4, 2016) (granting summary judgment against plaintiff but noting that "to the extent [plaintiff] is convinced that Air Evac's plan is deceptive, she can likely complain to the Department of Transportation about Air Evac's practices"). The adequacy of this remedy is for Congress, not the courts, to decide.

Ironically, Defendants' reliance on equitable principles is the very reason that preemption follows. Equitable doctrines typically have no place in breach-of-contract actions against air carriers. *See, e.g., Williams v. Fed. Express Corp*, WL 1276558, at *5 (C.D. Cal. Oct. 6, 1999) (finding that the doctrine of unclean hands was inapplicable because the ADA confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement); *also see ATA Airlines, Inc. v. Fed. Express Corp.,* 2010 WL 1754164, at *4 (S.D. Ind. Apr. 21, 2010) (finding that claims for equitable and promissory estoppel "are

preempted because they seek relief outside the scope of the parties' agreements); *Travel All Over the World,* 73 F.3d at 1432 n. 8 (holding punitive damages claim preempted because "[r]ather than merely holding parties to the terms of a bargain, punitive damages represent an enlargement or enhancement [of the bargain] based on state laws or policies external to the agreement") (internal quotes omitted).

Because Plaintiffs' remaining claims all stem from the belief that these rates were excessive, they too must be dismissed. Their claim for money had and received relies on the failed argument that Defendants' rates were unreasonable. A claim for money had and received, however, "is controlled by principles of equity and fair dealing." *Sholer v. State ex rel. Dep't of Pub. Safety*, 1995 OK 150, ¶ 3, 945 P.2d 469, 479, *as corrected* (June 26, 1997), *as supplemented on reh'g* (July 1, 1997), *as corrected* (Aug. 14, 1997). And Plaintiffs' request for injunctive and declaratory relief all hinge on the Court finding that Oklahoma law bars Defendants from charging these rates. The ADA therefore preempts these claims as well.

## CONCLUSION

Because the ADA preempts Plaintiffs' claims, Defendants' Motion [Doc. 19] is GRANTED and Plaintiffs' claims are hereby dismissed. There is thus no reason to address Defendants' Motion to Strike Class Allegations.

IT IS SO ORDERED this 15th day of March 2017.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE